**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MICHAEL BIRCH,<br>  Plaintiff, | No. 3:24-cv-1025 (SRU) |
| v. | |
| ANGEL QUIROS, *et al.*,<br>  Defendants. | |

**INITIAL REVIEW ORDER**

Plaintiff, Michael Birch ("Birch"), currently incarcerated at Osborn Correctional Institution ("Osborn"), brings this action *pro se* under 42 U.S.C. § 1983 against six defendants. Birch contends these defendants were deliberately indifferent to his serious medical needs.  Birch seeks damages and injunctive relief.

**I. Standard of Review**

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. That requirement applies both when the plaintiff pays the filing fee and when he proceeds *in forma pauperis*.  *See Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam).

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the

strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)

(quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy*

*v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro*

*se* litigants).

## II. Factual Background

Birch contracted a cold in early March 2024.  Compl., Doc. No. 1 at ¶ 1.  Birch's left ear

was blocked, he was congested, and he had a lump on his neck behind his left ear.  *Id.*  Birch

made a sick call request on March 16, 2024, and was brought to the prison's medical department

the next day.  *Id.* at ¶ 2.  There, Nurse Nicole[1] took Birch's temperature and blood pressure, but

she did not inspect his ear or the lump on his neck.  *Id.* at ¶ 3.  Nurse Nicole told Birch that he

was on the list to see his medical provider.  *Id.*

Birch continued to experience the above symptoms and became stressed while waiting to

see his medical provider.  *Id.* at ¶ 4.  Birch saw a mental health professional, who told Birch that

he was not on the list to see any medical provider.  *Id.* ¶ 5.  Birch filed two medical grievances in

early May 2024.  *Id.* at ¶¶ 6-7.  Nurse Michelle denied both grievances.  *Id.*  Nurse Michelle later

told Birch that she denied his grievances because the medical provider quit.  Doc. No. 1 at 6.

After filing a third medical grievance and a request to the warden, Birch's request to be seen by a

medical provider was finally granted.  *Id.* at ¶ 8.  Birch was seen by Dr. Thurber on May 22,

2024.  *Id.* at ¶ 9.  After evaluating Birch's ear and neck, Dr. Thurber told Birch that he had an ear

infection and that the lump on his neck was a lymph node.  *Id.*  Dr. Thurber ordered blood work,

antibiotics, an E.K.G., and Claritin.  *Id.* at ¶ 10.

---

[1] Birch spells this nurse's name as "Nocole" throughout the complaint.  Doc. No. 1 at 1, 3-4.  However, her printed
name on Birch's inmate request form is spelled "Nicole."  *See id.* at 9.  Therefore, I will refer to this nurse as
"Nicole" in this Order.

Three days after Birch's visit with Dr. Thurber, Birch asked Nurse Michelle about his Claritin. Doc. No. 1 at 6. Birch told Nurse Michelle that he was not feeling well and that he was stressed about his ear. *Id.* As of June 11, 2024 (the filing date of the complaint), Dr. Thurber had not seen Birch for a follow-up appointment, as Dr. Thurber had promised. *Id.* Nor had Birch received the blood work, Claritin, or check-up that Dr. Thurber ordered on May 22, 2024. *See id.* At the time of filing his complaint, Birch still had a blocked ear, a lump behind his ear, and flu-like symptoms. *Id.*

Birch now seeks monetary damages and injunctive relief in the form of medical care for his condition. *Id.* at 5.

## III. Discussion

The Court construes Birch's complaint as asserting a deliberate indifference to serious medical needs claim under the Eighth Amendment. He brings this claim against Angel Quiros, Connecticut Department of Correction ("DOC") Commissioner; Warden Martin, the Osborn warden; Miss Casey, the unit manager of the medical department; Dr. Thurber, Birch's medical provider; and Nurses Nicole and Michelle in the medical department.[2] *Id.* at 3-4.

### A. Deliberate Indifference to Serious Medical Needs

The Eighth Amendment prohibits both deliberate indifference to serious medical and mental health needs of prisoners. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access

---

[2] Birch names a "Miss Tiffany[,] Nursing Supervisor" in the caption, doc. no. 1 at 1, but lists a "Nurse, Administrative Coordinator" named "Michelle" as the sixth defendant, *id.* at 4, and refers to a "Nurse Michelle" throughout the body of the complaint. *See, e.g.*, *id.* at 5-6. Because Birch does not mention a "Miss Tiffany" anywhere other than the caption (including among the list of defendants), I presume that "Miss Tiffany" is "Nurse Michelle." If this presumption is in error, Birch may move to amend his complaint to name the appropriate defendant. *See e.g., Manning v. Cnty. of Westchester*, 1995 WL 12579, at *2 (S.D.N.Y. Jan. 5, 1995) (ordering caption be amended to "change the captioned police officer's name from Ralph Alexander to Arthur Alexander").

to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). "[N]ot every lapse in prison medical care will rise to the level of a constitutional violation; rather, the conduct complained of must shock the conscience or constitute a barbarous act." *Pimentel v. Deboo*, 411 F. Supp. 2d 118, 128 (D. Conn. 2006) (cleaned up). A claim for deliberate indifference to medical or mental health needs is comprised of objective and subjective elements. *Spavone*, 719 F.3d at 138. A plaintiff must satisfy both elements to succeed. *See id.*

Objectively, the plaintiff must allege that the "deprivation of adequate medical care" is "sufficiently serious." *Id.* (cleaned up). "When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (emphasis original) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

But when, as here, "the prisoner alleges that prison officials have failed to provide general treatment for his medical condition," "[t]here is no need to distinguish between a prisoner's underlying 'serious medical condition' and the circumstances of his 'serious medical need.'" *Smith*, 316 F.3d at 185-86. Thus, in cases like Birch's, satisfying the objective element turns on whether the prisoner's medical condition is "sufficiently serious." *Hanrahan v. Mennon*, 470 F. App'x 32, 33 (2d Cir. 2012) ("Where the allegation is that the defendant failed to provide any treatment for the medical condition, 'courts examine whether the inmate's medical condition is sufficiently serious.'" (quoting *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d

4

Cir. 2006))).  In determining whether a medical condition is "sufficiently serious," courts

consider whether "a reasonable doctor or patient would find [the medical condition] important

and worthy of comment," whether the condition "significantly affects an individual's daily

activities," or whether the condition causes "chronic and substantial pain."  *Chance*, 143 F.3d at

702 (cleaned up).

      Subjectively, the defendant must have "kn[own] of and disregarded the plaintiff's serious

medical needs."  *Chance*, 143 F.3d at 703.  The culpability required for a deliberate indifference

claim exceeds mere negligence.  *See Farmer v. Brennan*, 511 U.S. 825, 835-40 (1994).  Rather,

the defendant must act with "culpable recklessness, i.e., an act or a failure to act by a prison

doctor that evinces a conscious disregard of a substantial risk of serious harm."  *Chance*, 143

F.3d at 703 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (cleaned up).

"Officials need only be aware of the risk of harm, not intend harm."  *Spavone*, 719 F.3d at 138.

"[A]wareness may be proven 'from the very fact that the risk was obvious.'"  *Id.* (quoting

*Farmer,* 511 U.S. at 842).

      "Cases addressing whether an ear infection is a serious medical need are fact-specific."

*Therrien v. Husband*, 2011 WL 494771, at *3 (D. Conn. Feb. 7, 2011) (comparing cases).

However, the facts alleged in the complaint show that Birch's ear infection was, at minimum,

sufficiently "important and worthy of comment or treatment," for Dr. Thurber to order a full

blood work up, E.K.G., antibiotics, and Claritin.  *Chance*, 143 F.3d at 702; Doc. No. 1 at ¶ 10.

Moreover, courts have observed that "[t]he seriousness of an inmate's medical need may also be

determined by reference to the effect of denying the particular treatment."  *Smith v. Connecticut

Dep't of Corr.*, 2008 WL 918535, at *28 (D. Conn. Mar. 31, 2008) (citing *Hunt v. Uphoff,* 199

F.3d 1220 (10th Cir. 1999)).  Denying medical treatment to Birch caused him enough stress to

seek mental health assistance from a professional. *See* Doc. No. 1 at ¶¶ 4-5. I may infer from Dr. Thurber's prescribed treatment and Birch's reaction when he did not receive this treatment that Birch's ear infection was "sufficiently serious." *See Chance*, 143 F.3d at 702; *Smith*, 2008 WL 918535, at *28. Accordingly, Birch's complaint sufficiently alleges the objective element of his claim for purposes of initial review.

Additionally, Birch sufficiently alleges the subjective element of his claim. He alleges that two prison officials, Nurse Michelle and Dr. Thurber, "knew of and disregarded the plaintiff's serious medical needs." *Chance*, 143 F.3d at 703. Nurse Michelle received and denied two of Birch's medical grievances. Doc. No. 1 at ¶¶ 6-7. She later failed to ensure Birch received the treatments Dr. Thurber prescribed. *Id.* at 6. Dr. Thurber prescribed treatment for Birch's ear infection but failed to see him for a follow-up appointment ten days later, as he promised to do. *See id.* These facts show a "conscious disregard of a substantial risk of serious harm." *Chance*, 143 F.3d at 703 (cleaned up).[3] Accordingly, Birch's complaint sufficiently alleges the subjective element of his claim for purposes of initial review.

Having sufficiently alleged both the objective and subjective elements of an Eighth Amendment claim for deliberate indifference to serious medical needs, this claim may proceed to service.

## B. Requests for Relief

It is unclear from Birch's complaint whether he sues defendants, all of whom are state

---

[3] For example, the subjective element is adequately alleged where: one doctor "knew of [plaintiff's] serious medical needs but ignored his need for pain relief and immediate medical care[;]" another doctor "knew of [plaintiff's] medical condition and pain but ignored his requests to be seen 'soon' by a specialist[;]" and a nurse "ignored [plaintiff's] complaints of pain and need for medical care and may have deliberately sought to delay or interfere with his request for 'timely' medical care." *Silva v. Kilham*, 2020 WL 2404922, at *5 (D. Conn. May 12, 2020). *See also Giraud v. Feder*, 2021 WL 1535751, at *4 (D. Conn. Apr. 19, 2021) (finding plaintiff's allegation that a doctor "failed to follow up to ensure he received an MRI or further treatment" was sufficient, "for purposes of initial review, to evince deliberate indifference to serious medical needs").

employees, in their official or individual capacities. *See* Doc. No. 1 at 3-4. To the extent he asserts official capacity claims for monetary damages against defendants, such claims are dismissed as barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Thus, I consider only whether Birch has sufficiently alleged claims against any defendant in his or her individual capacity for damages.

A plaintiff seeking to recover money damages under section 1983 from a defendant in his or her individual capacity must demonstrate "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). In *Tangreti v. Bachmann*, the Second Circuit held that "after *Iqbal*, there is no special rule for supervisory liability." 983 F.3d 609, 618 (2d Cir. 2020). Instead, "[t]he violation must be established against the supervisory official directly." *Id*. Therefore, a government or prison official is not personally involved in the violation of a plaintiff's constitutional rights simply "by reason of [the official's] supervision of others who committed the violation." *Id*. at 619. Rather, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id*. at 618 (quoting *Iqbal*, 556 U.S. at 676).

Birch does not allege facts showing personal involvement of supervisory officials Commissioner Quiros, Warden Martin, or Unit Manager Casey. Doc. No. 1 at 4-6. Thus, those defendants cannot be sued for damages in their individual capacities. *See Tangreti*, 983 F.3d at 618-19. Birch mentions Nurse Nicole in his complaint, but alleges she merely examined Birch and told him he would be seen by a medical provider. Doc. No. 1 at ¶ 3. I cannot infer from these facts that Nurse Nicole "disregarded the plaintiff's serious medical needs," even if I could infer she knew of them. *Chance*, 143 F.3d at 703. *See Lombardo v. Graham*, 807 F. App'x 120,

122-23 (2d Cir. 2020) (holding a nurse who examined plaintiff after inmate assault and sent him to his cell with ibuprofen did not have sufficiently culpable mental state because plaintiff's allegations did not show she was "actually aware that his injuries were so severe as to require immediate medical treatment and that she consciously disregarded the risk of delaying such treatment").

Birch alleges that Nurse Michelle, in contrast to Nurse Nicole, knew of Birch's ear infection, refused to schedule him to be seen by a doctor, and failed to ensure that Birch received prescribed treatment after he saw a doctor. *See* Doc. No. 1 at 5-6. Dr. Thurber likewise knew of Birch's ear infection because she examined Birch. *Id.* at ¶ 9. And Dr. Thurber similarly failed to ensure that Birched received prescribed treatment by failing to follow up with Birch ten days after the examination, as Dr. Thurber had promised. *Id.* at 6. Nurse Michelle and Dr. Thurber may be sued for damages in their individual capacities because they were personally involved in the alleged constitutional violation.

Birch also seeks injunctive relief in the form of medical treatment for his ear infection and the lump on his neck. *See* Doc. No. 1 at 5. Unlike an individual capacity claim for monetary damages under section 1983, claims for injunctive relief do not require a defendant to have personal involvement in the constitutional violation. *See Smith v. Muccino*, 223 F. Supp. 2d 396, 403 (D. Conn. 2002) ("[P]ersonal involvement is not a prerequisite to injunctive relief, and such relief may be had against officers in their official capacity. . . ."). However, injunctive relief may only proceed against a defendant to the extent that a defendant has the power to remedy the alleged on-going constitutional violation. *See Scozzari v. Santiago*, 2019 WL 1921858, at *6 (D. Conn. Apr. 29, 2019) (citing *Ex parte Young*, 209 U.S. 123, 157 (1908) (defendant official must have some connection with enforcement of allegedly unconstitutional act)).

Assuming that the alleged constitutional violation is on-going, Nurses Nicole and Michelle do not have the power to provide Birch the medical care he seeks. However, the remaining defendants may have that power. *See*, *e.g.*, *Dooley v. Cook*, 2020 WL 6395576, at *11 (D. Conn. Nov. 2, 2020) (allowing plaintiff's request for medical injunctive relief to proceed to service against DOC Interim Commissioner, warden, prison doctor, and medical supervisor). Accordingly, Birch may seek injunctive relief against Commissioner Quiros, Warden Martin, Medical Unit Manager Casey, and Dr. Thurber in their official capacities.

**IV. Motions to Appoint Counsel**

Birch has filed three motions to appoint counsel. *See* Doc. Nos. 3, 14, 15. Generally, a plaintiff is not entitled to court-appointed counsel in civil proceedings; and the Second Circuit has repeatedly cautioned against the routine appointment of counsel. *See, e.g., Hendricks v. Coughlin,* 114 F.3d 390, 393 (2d Cir. 1997); *Cooper v. A. Sargenti Co.,* 877 F.2d 170, 171-72 (2d Cir. 1989). *See also* D. Conn. L. Civ. R. 83.10(c)1. ("Pro bono counsel may be appointed *at the discretion of the presiding judge* upon motion or on the initiative of the presiding judge when the judge determines that the appointment will serve the interests of justice based upon factors such as (a) a party's apparent ability or inability to afford legal counsel, (b) the likelihood that counsel may be secured under alternative fee arrangements, and (c) the apparent merit of the party's claims or defenses.") (emphasis added). *But see Mustafa v. Stanley*, 2020 WL 6536910, at *3 (D. Conn. Nov. 6, 2020) (appointing pro bono counsel despite the "early stage in the case" after concluding in the court's initial review order that the incarcerated plaintiff "made a plausible case").

The Second Circuit has held that, because volunteer lawyer time is not always readily available, a plaintiff seeking appointment of counsel must make a threshold showing that he

"sought counsel and has been unable to obtain it." *McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 123 (2d Cir. 1988). A plaintiff must also demonstrate attempts to obtain assistance from the Inmates' Legal Aid Program ("ILAP") to show the court "he is unable to obtain legal assistance on his own." *Swinton v. Wright*, 2016 WL 3579075, at *2 (D. Conn. June 28, 2016) (finding that the plaintiff, who was declined representation by two law firms, failed to establish that he was unable to secure legal assistance because he did not attempt to contact ILAP).

District courts "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e). "Broad discretion lies with the district judge in deciding whether to appoint counsel pursuant to [28 U.S.C. § 1915(e)]." *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986). In evaluating motions to appoint counsel, "[a] court must exercise its discretion in accordance with sound legal principles." *Id.* Those legal principals include ensuring indigent plaintiffs have "meaningful access" to the courts. *Id.* (quoting *Bounds v. Smith*, 430 U.S. 817, 823-24 (1977)).

The first step in deciding whether to appoint counsel is determining whether an indigent plaintiff's "position seems likely to be of substance." *Hodge*, 802 F.2d at 61. After this threshold determination, courts should then consider:

> [An indigent plaintiff's] ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the [plaintiff's] ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Id.* at 61-62. There is strong cause for appointing counsel when a case requires "substantial factual investigation" and the "factual issues turn on credibility." *Id.* at 60-61.

Birch's trust account statement and motions to appoint counsel show that he is both unable to afford legal counsel and that he has tried to secure representation from both private

attorneys and ILAP.  Doc. No. 5; Doc. No. 14 at 4-5.  Additionally, Birch's complaint "pass[es]
the test of likely merit."  *Cooper,* 877 F.2d at 173.  As explained above, Birch's claim
sufficiently alleges an Eighth Amendment deliberate indifference to serious medical needs claim.
For the same reasons, Birch's claim is "likely to be of substance."  *Hodge*, 802 F.2d at 62.

Finally, Birch's complaint and subsequent motions to appoint counsel contain allegations
that, if taken as true, strongly indicate appointing counsel for Birch "will serve the interests of
justice."  D. Conn. L. Civ. R. 83.10(c)1.  The need for counsel to ensure "efficacy and accuracy"
in Birch's litigation is heightened due to the seriousness of his ongoing medical condition.
*Merritt v. Faulkner*, 697 F.2d 761, 764-66 (7th Cir. 1983) (granting a new trial and appointing
counsel for an incarcerated plaintiff bringing a deliberate indifference to medical needs claim).
Since filing his complaint in June 2024, Birch alleges he has experienced hearing loss due to lack
of medical intervention—the very reason he filed suit.  Doc. No. 15.  Birch's hearing loss and
medical condition also likely impact his ability to gather crucial facts and present his case.
*Hodge*, 802 F.2d at 60.  *See, e.g.*, Doc. No. 1 at 1, 4-6 (incorrectly naming certain defendants in
complaint).  Seeking injunctive relief from certain defendants and damages from others based on
a constitutional tort allegedly perpetrated by state officials involves complex legal issues that
attorneys struggle to litigate, let alone *pro se* plaintiffs.  *See id.* at 60-62.  Finally, Birch's claims
will likely require a factfinder to determine whether Dr. Thurber's and Nurse Michelle's
testimony concerning their actions is credible.  *Id.*

Accordingly, the interest of justice convinces me to appoint counsel for Birch and his
motion to appoint counsel is **granted**, doc. no. 14.  Birch's other motions to appoint counsel,
doc. nos. 3 and 15, are **denied as moot**.

**V. Conclusion**

In conclusion, Birch may seek damages from Nurse Michelle and Dr. Thurber in their individual capacities on his Eighth Amendment deliberate indifference to serious medical needs claim. Birch may also seek injunctive relief related to this claim against Commissioner Quiros, Warden Martin, Medical Unit Manager Casey, and Dr. Thurber in their official capacities. The Clerk is directed to correct the names of Nurse Michelle and Nurse Nicole on the docket, changing "Miss Tiffany" to "Nurse Michelle" and "Nurse Nocole" to "Nurse Nicole." All other claims are **dismissed**, and Nurse Nicole is **terminated** as a defendant.

Birch's motion to appoint counsel, doc. no. 14, is **granted**. Accordingly, the Clerk is directed to appoint *pro bono* counsel for Birch for all purposes going forward. Birch's first and third motions to appoint counsel are **denied as moot**. Doc. Nos. 3, 15.

The Court enters the following additional orders.

(1)    **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain current service addresses for defendants Dr. Thurber and Nurse Michelle, mail a waiver of service of process request packet containing the complaint and this order to them at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If the defendants fail to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendants in their individual capacities and the defendants shall be required to pay the cost of such service.

(2)    **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the Complaint on defendant Commissioner Quiros, Warden Martin, Medical Unit Manager Casey,

12

and Dr. Thurber in their official capacities at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3)    **The Clerk shall** send the plaintiff a copy of this Order.

(4)    **The Clerk shall** send a courtesy copy of the complaint and this order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)    The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(6)    Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(7)    All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8)    Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)    If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated.  The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If

the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(10)    The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  The plaintiff is advised that the Program may be used only to file documents with the court.  As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(11)    The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

So ordered.

Dated at Bridgeport, Connecticut, this 18th day of March 2025.


/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge